BORDER NOVELTY COMPANY *v.* UNITED STATES

No. 7950.—

Entry No. 934–S.

(Decided February 7, 1951)

*Lang, Byrd, Cross & Ladon* (*John P. Giles, Leslie Byrd, Philip Stein,* and *Marjorie M. Shostak* of counsel) for the plaintiff.

*David N. Edelstein,* Assistant Attorney General (*Dorothy C. Bennett, Richard H. Welsh,* and *Samuel D. Spector,* special attorneys), for the defendant.

JOHNSON, Judge: This is an appeal for reappraisement which involves the proper value of certain cigarette lighters imported from Mexico. They were invoiced at Mexican $5.50 each, plus containers and Mexican stamp tax, and appraised at United States $2.375 each, packed, plus 0.88 per centum.

At the trial there was admitted in evidence on behalf of the plaintiff, collective exhibit 1, consisting in part of interrogatories and depositions of Juan Torres, the manufacturer of the lighters in question. Attached thereto were 11 exhibits, numbered A, B, C, D, E,

F, B–1, C–2, E–1 [sic D–1], E–1, and F–2. Said exhibit also includes the interrogatories and depositions of David Drucker, who purchased cigarette lighters from Juan Torres. Attached thereto are exhibit A, consisting of a photostatic copy of the bill of sale, and exhibit AA, consisting of one of the Torres lighters. Said exhibit also includes the interrogatories and depositions of Hipolito Franco, a competitor of Juan Torres. Attached thereto are exhibit A, a letter to the Border Novelty Company, wherein he offered his lighters for sale, and exhibit C, consisting of one of the lighters he manufactures.

On behalf of the Government there was admitted in evidence the report of the customs agent, W. W. Fraser, of January 2, 1946, together with a copy of the contract between Torres and the plaintiff and translations thereof, as collective exhibit 2; and the report of the same customs agent, dated April 12, 1945, having attached thereto a cigarette lighter, was admitted in evidence as collective exhibit 3. There were also admitted in evidence on behalf of the Government a Torres lighter having certain holes bored through it, as exhibit 4, and a lighter identical in appearance with the lighter attached to collective exhibit 3, except that it had holes bored through it, was admitted as exhibit 5.

The affiant, Juan Torres, testified that he manufactures sanitary equipment and metallic articles, including cigarette lighters; that he has been in business for 17 years but did not manufacture lighters until March 1945; that he sold lighters to the Border Novelty Company, the plaintiff herein, from March 1945 to December 1945; that he had a written contract dated April 11, 1945, to sell 10,000 lighters at 5.50 pesos each, receiving 30 per centum of the total value of the first sale at the time of contract, 2,000 to be delivered in 6 weeks, etc. The lighters were to be manufactured of metallic antimony, weighing 70 grams each, well finished, well cleaned, without defects, nickel-plated, and engraved with the word "Bonoco" and the words "made in Mexico." Agreement was also made to sell two other lots of 10,000 each at a price of 5.25 pesos each.

The affiant also stated that he had sold to other buyers in Mexico, consisting of retail merchants, at a price of 5.50 pesos each, although he could not recall all their names or addresses. He recalled, however, selling the identical lighter to Felipe Germaize, 800 lighters, at a price of 5.25 pesos each in April 1945; to David Drucker, 300 lighters at a price of 5.50 pesos each on June 11, 1945; and to Samy Rozanes, 12 lighters on June 16, 1945, more or less as samples, and 500 lighters on July 27, 1945, at a price of 5.50 pesos each; that besides the foregoing, he recalled selling 120 cigarette lighters to Alfonso Barrera on May 2, 1945; to Rodolfo Juarez, a quantity of 50 lighters on July 13, 1945; and 100 lighters to Ignacio Sanchez on July 27, 1945, all of whom lived in the capital.

The affiant stated that he did not advertise in any newspaper, nor did he have a price list, but he freely offered these identical lighters to any buyer at a price of 5.50 pesos each, and he made no concessions for quantity; that the local sales price included a small individual container for each lighter and also a carton which would contain 250 lighters; and that the lighters sold to the plaintiff did not include either the small or large containers. He stated further that he offered to sell Drucker lighters whenever he had any available; that Drucker came to see him about purchasing lighters, and as he had 300 available, he sold them to him, but he never came back to purchase any more.

The affiant stated in answer to the cross-interrogatories that to the best of his knowledge and belief no customs agent had ever called upon him to interview him about his cigarette lighters; that if a customs agent did call, he did not identify himself; and further, no one had ever asked to see nor had he ever shown his books to any person who came to interview him during the period around December 27, 1945.

The affiant further stated that all of his lighters were identical in character; that the cost of production of 1,000 lighters was 2,762.50 pesos; and that he did not keep the cost of production nor the number manufactured by months. During the months of April to July 1945, he manufactured lighters which were sold to the Border Novelty Company, although all of his production during those months did not go exclusively to that company.

The affiant further stated that the photostatic copy of the invoice addressed to Felipe Germaize, dated April 19, 1945, was a copy of his original invoice issued in connection with a sale to Germaize and he has in his office a file copy of such invoice, and produced it, marked exhibit B–1; that Mr. Germaize came personally and picked up the lighters; and that they were manufactured of 93½ per centum zinc, 5 per centum aluminum, and 1½ per centum copper.

Affiant further stated that he manufactured a total of approximately 14,000 lighters from May to November 1945, and in no months were the lighters sold exclusively to the Border Novelty Company. As to other manufacturers of cigarette lighters in Mexico, the affiant knew of only one, located in Guadalajara, Jalisco, Mexico, but he sold in Mexico, Central America, and South America only, the body of such lighter being of aluminum and the wick and flint cover being of brass.

Exhibit A, attached to the commission, is a photostatic copy of the contract between Torres and the Border Novelty Company; exhibit B is a photostatic copy of the bill of sale of 800 lighters at a price of 5.25 pesos to Felipe Germaize, dated April 19, 1945; exhibit C is a photostatic copy of the bill of sale of 300 lighters at a price of 5.50 pesos to David Drucker, dated June 11, 1945; exhibit D is a photostatic copy of the bill of sale of 12 lighters at a price of 5.50 pesos to

Samy Rozanes, dated June 16, 1945; exhibit E is a photostatic copy of a bill of sale of 500 lighters at a price of 5.50 pesos to Samy Rozanes, dated July 27, 1945; exhibit F is a photostatic copy of the costs entering into the production of 1,000 lighters: exhibit B–1 appears to be a carbon copy of the bill from which the photostat, exhibit B, was made; exhibit C–2 appears to be a carbon copy of the bill from which the photostat, exhibit C, was made; exhibit E–1 [sic D–1] appears to be a carbon copy of the bill from which the photostat, exhibit D, was made; exhibit E–1 appears to be a carbon copy of the bill from which the photostat, exhibit E, was made; and exhibit F–2 is a copy of the production costs of 1,000 lighters, the amounts shown agreeing with those shown in exhibit F.

The affiant, David Drucker, stated that he was engaged in buying and selling general merchandise; that he purchased cigarette lighters from Juan Torres of Tacuba, D. F., Mexico; that the lighters were nickel-plated zinc; that he purchased 300 lighters at a price of 5.50 pesos each, and he recognized a photostatic copy of the bill of sale as a true copy. The affiant further stated that he is acquainted with Mr. Irving Davis of the Border Novelty Company, and that he had compared the lighters he purchased with those purchased by the Border Novelty Company and found them to be identical in character. The affiant further stated that the only date he did business with Mr. Torres was on June 11, 1945, at his factory in Tacuba; that he placed his order with him on said date; that his order was made orally and not in writing, and he received the lighters the same day as the order, and paid for them in cash, but had lost the original bill.

Exhibit A, attached to the affidavit, consisted of a photostatic copy of the bill of sale from Torres to Drucker of 300 lighters. This exhibit is identical with the exhibit C, attached to Torres' affidavit, of which exhibit C–2 attached thereto appears to be a carbon copy of the original from which it was made. Exhibit AA consists of a cigarette lighter which is identical in character with exhibit 4, the imported merchandise.

Affiant Hipolito Franco of Tacuba stated that he was a manufacturer of tools and dies; that he was selling cigarette lighters in May 1945 and offered them to Mr. Davis of the Border Novelty Company by letter, copy of which is marked exhibit A and attached to his affidavit; that he manufactured the lighters he offered for sale and had furnished the Border Novelty Company with a sample; that he offered his lighters at a price of 5 pesos each, if nickel-plated, and 5.25 each, if chrome-plated, including the cost of a small cardboard container for the individual lighter; and that at the same time he was freely offering such lighters for sale in Mexico at the same price, except that his offered price included a large container holding a hundred lighters. Affiant further stated that he had not compared his lighters

with those manufactured by Juan Torres nor had he ever seen them; that the Border Novelty Company did not purchase any lighters from him during the months of May, June, and July 1945. Affiant further stated that his lighters are made from materials in proportions of 91 per centum zinc, 4 per centum aluminum, 2 per centum copper, and 3 per centum brass, and were nickel- or chrome-plated, and that he was freely offering the lighters he manufactured for sale in Mexico to various buyers verbally and sold same to various clients. Affiant further testified that the sample which he marked, exhibit C, is the same that he offered to the Border Novelty Company, except that the wick cover is a little shorter at one end and rounder at the other, and the body of the lighter is also a little shorter, and neither is it chrome-nor nickel-plated. The affiant stated that he offered his lighters in quantities up to 500 weekly, and during May, June, and July 1945 he sold approximately 3,200 lighters in the capital of Mexico and surrounding states; that his offers and sales were made verbally and he neither advertised nor offered a price list; that his prices were the same regardless of quantity and he had never sold any lighters in the United States; and that the sales he made were in quantities of from 100 to 800. The sample of the lighter manufactured by Hipolito Franco, attached to the affidavit, as exhibit C, was not plated with chrome or nickel, presenting a dark gray appearance.

Collective exhibit 3 consists of a report of Treasury Representative Fraser, dated April 12, 1945, admitted in evidence on behalf of the defendant. The report covers an investigation made by the Treasury representative of cigarette lighters exported from Mexico in November and December 1944, which had been manufactured by Articulos Modelados, S. de R. L., of Calle Sanchez Trujillo 91, Mexico D. F., Mexico, and which were shipped to the United States to various purchasers *not* including the plaintiff herein. At the factory, the Treasury representative interviewed a Mr. Heres, who was the co-owner and plant manager. He was apprised of the fact that Articulos Modelados, S. de R. L., sells his entire output exclusively to Oromex, S. de R. L., of Mexico City, but that his firm is the manufacturer of the chrome-plated zinc cigarette lighters which Ultramar, S. A., of Mexico City, sells and ships to the United States.

The Treasury representative then visited Oromex and interviewed Federico Langer, the manager. Oromex, according to the Treasury representative, freely offered and sold the lighters in Mexico for home consumption, but did not freely offer or sell same for exportation to the United States; that Federico Langer and Moritz Lazar Ellenbogen, manager of Ultramar, S. A., of Mexico City, entered into an oral agreement on November 11, 1944, as follows:

* * * whereby he was to sell these lighters exclusively to Oromex at the price of 8.70 pesos each for the first quality, and 8.50 pesos each for the second

quality lighters, and that on March 1, 1945, it was further agreed that Oromex was to pay 9.00 pesos each for first grade lighters and 8.80 pesos each for "seconds," packed.

The Treasury representative later, on March 21, 1945, and on subsequent dates, visited the offices of Ultramar, S. A., and interviewed Moritz Lazar Ellenbogen, the manager, who stated he sold for export to the United States.

The Treasury agent also interviewed a buying agent, Zygmont Warren, and also Max Seligson, who bought for United States firms, and there was some indication that Ellenbogen was not honest. However, the Treasury representative ascertained that, upon the sale of cigarette lighters for export to the United States, no discounts are offered or granted; packing, including outer cases, is included in the price; the Mexican stamp tax of 0.88 per centum is extra as well as all other charges; and that Mexico City was the principal market. From Mr. Ellenbogen, the Treasury representative obtained sales in November and December 1944 to Holzer of first-grade cigarette lighters at a price of $2.375 each. The grade of the lighter was furnished by Mr. Ellenbogen from memory. A sample of the lighter in question was attached to the report. This exhibit is exactly the same as defendant's exhibit 5, which had been tested by the chemist by boring holes therein and determining from the borings the various ingredients. It will be noted that the appraised value of the lighters at issue herein is exactly the same as appears in the Treasury representative's report.

Collective exhibit 2 consists of a report of Treasury Representative W. W. Fraser, dated January 2, 1946, admitted in evidence on behalf of the defendant, relative to the value of cigarette lighters exported by Juan Torres. Attached thereto is a carbon copy of a contract between Juan Torres and Border Novelty Company, together with three copies of translations thereof into the English language. The copy of this report, however, is not the copy from which the photostatic copy was made which was attached to the affidavit of Juan Torres as exhibit A.

The Treasury representative stated that he obtained a personal interview with Juan Torres on December 27, 1944, and made an inspection of his books and stated that the consular invoices agreed with the commercial invoices. He stated that Mr. Torres told him that if his production had exceeded his delivery to the Border Novelty Company under his contract, he could have sold the excess to others. However, he was kept busy supplying the Border Novelty Company and made no attempt to sell lighters to other purchasers for exportation to the United States. The Treasury representative stated further that the cost of individual containers and outer cases could not be verified from the manufacturer's records as having been charged for extra at their actual cost. He did state, however, that the Mexican

stamp tax of 0.88 per centum is included in the price of the merchandise, and that the consular invoice charges, local cartage, aforo tax, and express charges are extra. The Treasury representative also made the following statement:

Mr. Torres said that under ordinary conditions the quantity purchased would affect his prices, however, he was unable in this instance to say what his price would have been for a less quantity than 10,000 lighters should such sale have been made under ordinary conditions.

\*        \*        \*        \*        \*        \*        \*

### FOREIGN VALUE

Mr. Torres said that he had not tried to sell the lighters for home consumption in Mexico until after July 1945, when he was advised by the Border Novelty Company that they would not take any more of his lighters.

According to Mr. Torres, only one sale was made other than to Border Novelty Company, that being to one Samy Rosanes, Mexicali, B. C., Mexico, of 2,000 such lighters during the month of August 1945, at the price of 5.50 pesos each.

Mr. Torres said that he had not maintained any record of the sale to Rosanes and did not know whether it was a bona fide home consumption sale, or whether Rosanes had purchased the lighters for resale to the United States.

The plaintiff contends that the appraiser illegally resorted to the value of so-called similar merchandise when there existed a value for "such" or identical merchandise; that an appraiser may not take as a guide in finding value, offers and sales made by manufacturers of similar merchandise when there are offers and sales made by the manufacturer of such or the identical merchandise. It is further contended that the appraised value is based on goods sold by Ultramar, S. A., which are not at all similar to the imported merchandise, and not within the period approximating the date of exportation of the merchandise at bar. The sales of the article found to be comparable to the imported article were made from January 2, 1945, to January 8, 1945.

Plaintiff further contends that if no foreign or export value existed for the exported merchandise then the proper value should be held to be equal to the lower foreign or export value of nickel-plated lighters similar to that at bar made by one Hipolito Franco offered and sold in Mexico for domestic consumption and export at or about the time of exportation of the lighters herein at 5 pesos per unit, including Mexican stamp tax and individual cartons, plus the cost of cartons (1 peso each) per 100 lighters.

The Government contends that the customs agent's report is predicated upon an actual inspection and examination of the exporter's books and records, that certain facts contained in the report were peculiarly within the knowledge of the exporter, and that these self-evident facts substantiate the correctness of the contents of the report and nullify the truthfulness of the witness Torres' testimony. It is further contended along that line of argument that there is a very

serious question raised by the contradictory proof as to the veracity of the witnesses. If that question is decided in favor of the Government, counsel for the Government contends that it is definitely established that there is no foreign or export value of *such* merchandise, and that the foreign or export value of *similar* merchandise, whichever is higher, necessarily should be held to be the proper basis of valuation.

On the question of similarity of the merchandise, counsel contends that its physical appearance is convincing as to its use and purpose, and that it contains the other elements of similarity essential to predicate a basis of value. There being no proof to the contrary, it must be assumed to be similar for appraisement purposes.

There are three different cigarette lighters in evidence. The Torres lighter has been appraised at the same value as the Articulos Modelados lighter, but not at the price sold to Oromex, or the price Oromex sold to Ultramar, but the price Ultramar sold to an American purchaser. The plaintiff contends that if the similarity is to be the criterion of appraisement, the Hipolito Franco lighter should be used rather than the Articulos Modelados lighter.

Samples of each of these lighters are before the court and stand as mute witnesses as to their similarity or dissimilarity. The Torres lighter is 1⅜ inches wide, by 1½ inches high, by ½ inch thick. The body is hollow and filled with wicking material to absorb the lighting fluid, having an opening in the bottom which is opened or closed by means of a screw cap. The hollow portion of the lighter is constructed of one piece of metal. To such solid portion is riveted the movable parts composing the lighter. That is to say, it is the portion containing the flint with a file-like surface in front of the flint, in the form of a small wheel, which is turned by means of a rough-surfaced wheel immediately below it. These wheels are held in place by means of a small screw. At the back of the flint receptacle there is a screw having a slot for the use of a screw driver so that the flint may be adjusted to keep it tightly pressed against the steel wheel. Alongside the flint receptacle is a cover on a pivot so that the arm thereof may be raised and lowered. This device acts as a snuffer for the wick. When the lighter is to be ignited, the snuffer, of course, is raised. When lowered, it snuffs out the wick over which it closely fits. This snuffer arm also covers the top part of the steel wheel.

The Articulos Modelados lighter, used as a basis for appraisement, appears to be of entirely different construction. In the first place, it is a patented article, No. 43054. It is made of one piece of metal except for the bottom thereof, which contains an opening for the admission of lighter fluid, such being closed by means of a screw cap. This bottom piece is separately attached to the lighter by means of rivets. This portion is fitted inside the case of the body of the lighter so that it outwardly presents the appearance of one piece of metal

with the body. The top or working portion of the lighter has a thumb screw with which to regulate the flint to contact the steel. The steel in this case is a small wheel riveted to the body of the lighter. Pressure is applied directly to this wheel causing the file-like surface to scratch the flint to produce the spark necessary to ignite the wick which has been placed in proximity thereto. At the other side of the movable portion of the lighter is the snuffer. This is attached to the body of the lighter by riveting, and the snuffer end is a metal cover which is extended in order to entirely cover this wick and the steel wheel. The lighter is 1⅞₆ inches long, 1⅜ inches high, and ⅚₆ inch thick.

The construction of the Hipolito Franco lighter is similar to that of the Torres lighter. It is practically the same size with the same kind of body constructed of one piece of metal with the working portions riveted to the top. The flint and steel construction is exactly the same as the Torres lighter except that the screw designed to tighten the flint against the steel wheel has a thumb-screw construction rather than the ordinary screw top. However, the snuffer is entirely different from the Torres lighter. The snuffer covers only the wick portion of the lighter. The flint and steel portions are entirely exposed. The base of the snuffer is not an integral part of the upper portion of the lighter as in the Torres and Articulos Modelados lighters, but is fastened thereto by means of screw attachments. On the whole, the Franco lighter presents a much cheaper appearance than the Torres lighter, while the Articulos Modelados lighter not only is of different construction but presents a more expensive and desirable model.

It is the opinion of the court that the selling price of the Articulos Modelados cigarette lighter for export to the United States should not have been used as a basis for the finding of value of the Torres lighter: First, because it was not offered for sale and sold during the period of the sales of the Torres lighter; second, it is not similar in construction, except that both are cigarette lighters; and, third, that there were offered for sale and sold during the entire period in question the identical lighters in the principal market of Mexico at the price that these lighters were sold for export.

In the case of *United States* v. *Titan Shipping Co., Inc.*, 27 C. C. P. A. 178, C. A. D. 82, the value of perfumery for export was involved. Upon evidence appearing in the affidavit of the foreign manufacturer that he had "sold and invoiced" the involved merchandise "at the prevailing market prices in France for *identical merchandise* when sold in the ordinary course of business and in the usual wholesale quantities," the judgment of the customs court was affirmed. [Italics mine.] There, as in the case at bar, the evidence consisted of an affidavit of the manufacturer and a report of the assistant customs attaché. The

trial court in adopting the prices in the report stated that it is inconceivable that the assistant customs attaché, a sworn officer of the Government, could have any interest in reporting conditions otherwise than as he found them. However, the appellate division reversed the trial court, adopting the manufacturer's affidavit, and the division was affirmed in the appellate court.

In the case at bar, the Government contends that the customs agent's report is predicated upon an actual inspection and examination of the exporter's books and records and such report nullifies the truthfulness of the affidavit of the affiant, Torres. It is further contended that the veracity of the other witnesses of the plaintiff is in serious question. The court has carefully examined the affidavit of the manufacturer, Torres, sworn to before the American consul, and also the affidavits of David Drucker, who actually purchased identical merchandise from Torres, and that of Hipolito Franco, who was a competitor of Torres. The court is impressed with the straightforward answers to the interrogatories and cross-interrogatories made by these witnesses.

This court is of the opinion that the importer has fully established that the proper value of the merchandise on the date of shipment in question is the foreign value, as defined in section 402 (c) of the Tariff Act of 1930, and that such value is the entered value.

Judgment will be entered accordingly.